# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **MILDRED FAYE ESKUT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 1:09-00702 |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## **M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 13 and 15.) and Plaintiff's Reply. (Document No. 16.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 2 and 3.)

The Plaintiff, Mildred Faye Eskut (hereinafter referred to as "Claimant"), filed an application for DIB on July 27, 2006 (protective filing date), alleging disability as of May 18, 2006, due to a bad back and depression.[1] (Tr. at 14, 62-64, 76, 80, 104.) The claim was denied initially and on reconsideration. (Tr. at 26-28, 33-35.) On December 18, 2006, Claimant requested a hearing before an Administrative Law Judge. (Tr. at 36.) The hearing was held on January 10, 2008, before the Honorable Karen B. Peters. (Tr. at 370-99.) By decision dated January 24, 2008, the ALJ determined

---

[1]Claimant alleged depression as an additional disabling condition on her Disability Report - Appeal. (Tr. at 104.)

that Claimant was not entitled to benefits. (Tr. at 14-23.) The ALJ's decision became the final decision of the Commissioner on April 21, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On June 19, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

> degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since May 18, 2006, her alleged onset date. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease, back pain, abdominal pain, and depression, which were severe impairments. (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for a limited range of light exertional work as follows:

> The claimant can sit, stand, or walk 6 hours each, with the option to alternate sitting and standing and take brief stretch breaks in place. The claimant can perform occasional balancing, stooping, crouching, crawling, bending, and kneeling, but no climbing. The claimant has no visual, communicative, or manipulative limitations. The claimant requires a temperature controlled environment. Due to a moderate reduction in concentration, the claimant is limited to simple, non-complex tasks. Due to a mild to moderate reduction in social functioning, the claimant cannot work with

the public.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found that Claimant could perform her past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ further concluded that Claimant could perform alternative work as a bottling line attendant, cleaner, and companion sitter, at the light level of exertion. (Tr. at 23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 5, 1954, and was 53 years old at the time of the

administrative hearing, January 10, 2008. (Tr. at 22, 62, 375.) Claimant had a high school education and completed two years of college education, and was able to communicate in English. (Tr. at 22, 86, 375.) In the past, she worked as a certified nurse's assistant, radiology transporter, and safety trainer. (Tr. at 22, 81, 88-94, 375, 396.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's RFC. (Document No. 14 at 3-7.) She asserts that the ALJ's RFC is in direct conflict with several expert medical sources. (Id. at 4.) Regarding Claimant's physical impairments, she asserts that the ALJ erred in rejecting Dr. Kropac's RFC because his opinion was unchallenged by any medical professional. (Id.) Contrary to the ALJ's stated reasons, Claimant asserts that the evidence is not conflicting because there is a lack of a contrary RFC assessment. (Id.) Regarding her mental impairments, Claimant asserts that the ALJ should have given the opinions of Teresa Jarrell great weight because she had the benefit of psychological test results and reports of the mental health experts of record. (Id. at 5.) She alleges that the ALJ "cast aside an RFC by a licensed psychologist absent even a minimal level of analysis which would allow this Court to follow her reasoning." (Id.) With the exception of the RFC assessment of the state agency medical consultant, Dr. Debra Lilly, none of the records are inconsistent with Ms. Jarrell's RFC. (Id. at 6.)

The Commissioner asserts in response that the ALJ adopted all but one functional limitation

7

proposed by Dr. Kropac. (Document No. 15 at 9.) He contends that the record is devoid of any objective or credible subjective basis for Dr. Kropac's belief that Claimant could sit or stand only for two hours in an eight-hour workday. (Id. at 9-10.) The Commissioner asserts that the ALJ properly found that Dr. Kropac's treatment notes do not support this limitation. (Id. at 10.) Rather, the only evidence that supported the limitation was Claimant's subjective complaints. (Id.) Regarding Claimant's mental impairments, the Commissioner asserts that Ms. Jarrell's opinion properly was not given great weight because it was inconsistent with the medical evidence, the opinions o f Claimant's treating physician, Claimant's daily activities, and Claimant's high F scale score on her MMPI. (Id. at 12.)

Analysis.

RFC Assessment.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the

claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable

9

factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a

non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The

opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

1. Physical RFC.

Claimant first alleges that the ALJ erred in assessing her RFC by not giving significant weight to Dr. Kropac's RFC assessment. (Document No. 14 at 4-5.) On December 19, 2006, Dr. Kropac completed a form Medical Assessment of Ability to do Work Related Activities (Physical). (Tr. at 17, 22, 284-87.) Dr. Kropac opined that Claimant could lift and carry 20 pounds occasionally and ten pounds frequently; stand, walk, and sit only about two hours in an eight-hour workday and for only 30 minutes at a time; that she required the opportunity to shift from sitting to standing or walking at will; that she would need to lie down at unpredictable intervals during a work shift; that she was limited to performing postural activities on an occasional basis; and that her impairments would cause her to miss about one day of work per month. (Id.)

In his decision, the ALJ adopted Dr. Kropac's limitations except for those regarding her ability to sit, stand, and walk for only two hours in an eight-hour workday. (Tr. at 20.) The ALJ was

a little more restrictive than Dr. Kropac in that he assessed that Claimant should never climb. (Id.) He also assessed that Claimant required a temperature-controlled environment. (Id.) The ALJ declined to adopt the sit, stand, and walk limitations because they were inconsistent with his progress notes and the objective findings. (Tr. at 17.) As the ALJ noted, Dr. Kropac's treatment notes consistently referred to Claimant's ability to held and toe walk without evidence of weakness and to squat and rise, as well as findings of normal motor strength and range of motion of all joints of the lower extremities. (Tr. at 17, 246-47, 339-51.) Additionally, the AlJ noted that Claimant was treated conservatively only with prescription medications, including Orudis, Ultram, and Robaxin. (Id.)

Moreover, Dr. Kropac's sit, stand, and walk limitations were inconsistent with the other objective evidence of record. X-rays of Claimant's lumbosacral spine on August 10, 2004, revealed only moderate degenerative changes, as did a November 2, 2004, MRI scan. (Tr. at 16, 165-66, 354.) The state agency medical consultant, Dr. Amy Writs, M.D., found that Claimant was capable of sitting, standing, and walking for six hours in an eight-hour workday. (Tr. at 22, 254.)

As the Commissioner points out, the only evidence of the extreme limitations assessed by Dr. Kropac are Claimant's subjective complaints. But his symptoms alone are not enough to equate such a restrictive limitation. The substantial evidence of record does not support the limitation. Accordingly, the Court finds that the ALJ's decision to accord significant weight in part to Dr. Kropac's assessment, is supported by substantial evidence of record.

2. Mental RFC.

Claimant also alleges that the ALJ erred in failing to give great weight to the opinions of Teresa Jarrell, M.A. (Document No. 14 at 5-7.) On June 21, 2007, Ms. Jarrell performed a

13

consultative examination of Claimant at the request of her attorney. (Tr. at 19, 308-18.) On mental status exam, Ms. Jarrell observed that Claimant was moderately anxious, but seemed to understand the purpose of tests given her. (Tr. at 312-13.) Her thought content was relevant, her thought process was linear and goal-directed, she denied compulsive behavior or delusions, but Ms. Jarrell noted that mildly paranoid thoughts were evidence. (Tr. at 313.) Claimant also endorsed suicidal thoughts. (Id.) Ms. Jarrell opined that Claimant's immediate and remote memory was moderately deficient, her recent memory was severely deficient, her capacity for concentration was moderately deficient, as was her capacity for mathematical reasoning. (Id.) Judgment and insight were mildly deficient. (Id.)

Results of the MMPI-1 indicated that Claimant's level on the F Scale was in the marked range, which suggested that she experienced mild to moderate emotional distress, difficulty concentrating, and was very introverted and found it difficult to talk to new people. (Tr. at 314.) Ms. Jarrell assessed major depressive disorder, single episode, severe, without psychotic features; generalized anxiety disorder; panic disorder without agoraphobia; pain disorder associated with both psychological factors and a general medical condition; and a GAF of 55. (Tr. at 19, 317.) She opined that Claimant needed to continue psychiatric treatment and that his prognosis was poor. (Tr. at 19, 318.)

On July 12, 2007, Ms. Jarrell completed a form Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. at 335-38.) Ms. Jarrell opined that Claimant had marked ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday or workweek; perform at a consistent pace; and respond appropriately to work pressures in a usual work setting. (Tr. at 335-36.) She also assessed that Claimant was extremely limited in her ability to perform activities within a

14

schedule, maintain regular attendance, and be punctual. (Id.) All other functions were assessed as mildly to moderately deficient. (Id.)

In his decision, the ALJ considered Ms. Jarrell's opinions but rejected them as having been inconsistent with the evidence of record, the opinions of the treating medical professionals, Claimant's reported activities of daily living, and her high F scale score on her MMPI. (Tr. at 19.) The ALJ also noted that the opinion of disability is reserved to the Commissioner. (Id.) As the ALJ noted Ms. Jarrell's opinions were inconsistent with Dr. Bizri's treatment notes, which reflected intact cognition and memory, good attention and sociability, above average intelligence, and coherent and relevant stream of thought. (Tr. at 19, 260-69, 319-34, 361-66.) Ms. Jennings likewise found that Claimant had normal thought process, content, judgment, and remote memory. (Tr. at 18-19, 255-59.) She assessed only mild deficiencies in recent memory and social functioning and moderate limitations in concentration. (Id.) The ALJ accommodated these limitations by restricting her to simple, non-complex tasks, and restricting her from working with the public. (Tr. at 20.) Likewise, Dr. Lilly, a state agency medical consultant, opined that Claimant's mental impairments were non-severe in nature and resulted in only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. at 18-19, 270-83.)

In view of the foregoing, the Court finds that the ALJ's decision to reject Ms. Jarrell's opinions is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**,

the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2011.

R. Clarke VanDervort
United States Magistrate Judge